*784 Voto particular de conformidad emitido por el
Juez Asociado Señor Estrella Martínez,
al cual se unen el Juez Presidente Señor Hernández Denton y el Juez Asociado Señor Martínez Torres.
En ocasión de la aprobación de la enmienda al Canon 15 de Ética Judicial, In re C. 15; Regl. Uso Cámaras Proc. Jud., 188 DPR 424 (2013), y el establecimiento de un Programa Experimental para autorizar el uso de cámaras fotográficas y de equipo audiovisual, por parte de los medios de comunicación en determinadas Salas de Recursos Extraordinarios, advertí que esos pasos de avance no deben constituir un impedimento para continuar con los esfuer-zos simultáneos dirigidos a alcanzar la plenitud de acceso a los procesos judiciales nuestro esquema constitucional.(1)
La resolución emitida previamente por este Tribunal no tuvo el efecto de implantar meramente un Programa Experimental. Su impacto fue mucho mayor, toda vez que prácticamente aprobamos un nuevo Canon 15 de Ética Judicial, supra, que estableció una política pública de mayor apertura y acceso de la prensa y la ciudadanía a los proce-sos judiciales. Nótese que el nuevo Canon 15 extendió in-mediatamente a todas las salas civiles, criminales, de fa-milia y menores el uso de computadoras portátiles, teléfonos celulares, tabletas, entre otros dispositivos elec-trónicos o equipo similar. De esta forma, la prensa y los abogados y las abogadas pueden recopilar información y transmitirla con mayor precisión y agilidad, para beneficio de la ciudadanía. Obviamente, según unas normas que ga-ranticen que tales acciones no interfieran con los trabajos *785 de la sala, sean acordes con los mandatos éticos y no infrin-jan las garantías constitucionales de las partes.
No veo impedimento para que autoricemos, según esa nueva política pública, la petición de la prensa. Por el con-trario, la presente autorización contribuirá a poder obtener recomendaciones e insumos adicionales del programa experimental, desde el ámbito de los procedimientos criminales.
Sabido es que “el acusado no es el único acreedor del derecho fundamental a un juicio público, pues la ciudada-nía y la prensa también pueden invocarlo para lograr el acceso a dicho procedimiento”. Pueblo v. Pepín Cortés, 173 DPR 968, 977 (2008). Los derechos a la libre expresión, asociación y libertad de prensa, garantizados por la Sec. 4 del Art. II de la Constitución de Puerto Rico, LPRA, Tomo 1, y por la Primera Enmienda de la Constitución federal, así como el derecho de acceso a la información en poder del Estado, requieren que reflexionemos en torno a la realidad social de que ya no puede limitarse la publicidad del juicio a las personas presentes como espectadores. Debemos nutrirnos de la experiencia y de la tendencia mayoritaria a nivel de Estados Unidos y en múltiples jurisdicciones democráticas. No podemos obviar que “[l]a asistencia personal y directa a los juicios ha perdido importancia y, en contrapartida, se ha ampliado el círculo de los participantes indirectos a los que la prensa, la radio y la televisión transmiten las noticias judiciales”.(2)
Si no evolucionamos y reconocemos esta tendencia, sen-cillamente la naturaleza de la publicidad de los procesos judiciales quedará desvirtuada. Un razonamiento contra-rio, nos conduciría al absurdo de reconocer que es válido que un periodista escriba y transmita inmediatamente en twitter las palabras del juez al dictar la sentencia, pero que esas mismas palabras del juzgador no puedan ser radiodi- *786 fundidas o televisadas simultáneamente. Más importante aún, no veo la razón por la cual no podamos permitir que el acceso a la información fluya inmediatamente, más allá del sector de la población que disfruta de conexión a la red de internet.
En la petición particular ante nos, la prensa enmarca su reclamo en un compromiso de adherirse estrictamente al Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales. Ello, en reconocimiento al control que tendrá el juez del Tribunal de Primera Instancia para administrar los proce-sos adecuadamente. De igual forma, reconozco que el juz-gador del foro primario tiene las herramientas necesarias para proteger cualquier información, datos o identidades que sean necesarias proteger. Es decir, considero que existe el andamiaje reglamentario para implantar las medidas protectoras que sean requeridas para no menoscabar las garantías constitucionales que puedan activarse a favor de alguna de las partes en un procedimiento criminal.
Ciertamente, acceder a la petición formulada por el Taller de Fotoperiodistas, Inc., la Asociación de Periodistas de Puerto Rico y el Overseas Press Club constituye “un pel-daño adicional en ese proceso reformista”.(3) Como bien an-ticipé, “nuestra jornada hacia una mayor transparencia y al acceso pleno de la ciudadanía y la prensa a nuestros procedimientos judiciales no debe limitarse, ni mucho me-nos perpetuarse, en el ámbito experimental aquí aprobado. De lo contrario, las [h]uellas de apertura marcadas hoy podrían quedar borradas por la resaca del hermetismo y la ventisca de la secretividad de los procedimientos”.(4)

 In re C. 15; Regl. Uso Cámaras Proc. Jud., 188 DPR 424, 445 (2013), voto de conformidad del Juez Asociado Señor Estrella Martínez.

 http://www.catedrahendler.org/doctrina — in.php?id=40 (última visita, 4 de noviembre de 2013).

 In re C. 15; Regl. Uso Cámaras Proc. Jud., supra, pág. 477.

 Íd.